Platt v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-93-144-CR

     ALFRED GERALD PLATT,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the County Criminal Court at Law No. 2
Harris County, Texas
Trial Court # 9232666
                                                                                                    

O P I N I O N
                                                                                                    

      Appellant Platt appeals from his conviction for driving while intoxicated, for which he was
sentenced to ninety days in jail, probated, and a $400 fine.
      About 2:00 a.m. on July 7, 1992, Appellant was stopped by Officer Gray in the 12400 block
of Memorial Drive. Officer Gray testified Appellant was traveling 53 miles-per-hour; that
Appellant smelled of alcoholic beverage; that Appellant's speech was slurred; that he observed
Appellant had some physical problems; that he gave Appellant a field-sobriety test at the scene that
involved putting one foot in front of the other; that, in his opinion, Appellant failed the test; and
that he took Appellant to the Village Police Department. At the police station a videotape was
made of Appellant performing sobriety tests. Officer Gray testified that seeing the video, he was
of the opinion that Appellant lost the normal use of his mental and physical faculties by reason of
the induction of alcohol into his body.
      Officer Gray further testified that Appellant's license plate indicated he was a disabled
veteran; that Appellant told him he had been injured in the Viet Nam war when, as a pilot, he had
been shot down and his plane crashed; that he did not know what was normal for Platt; that when
he placed Platt under arrest he believed Platt had lost normal use of his mental and physical
faculties without knowing what was normal for him; and that seeing Appellant on video, there was
no doubt in his mind that Appellant was intoxicated.
      Officer Keys testified he arrived at the scene when Appellant was starting a field-sobriety test;
that Appellant did not pass the test; that, in his opinion, Appellant had lost the normal use of his
physical and mental faculties; that his opinion was based on what a person should be able to do. 
He further testified that the next day he learned that Appellant had a problem with his spine and
neck; that this would probably affect Appellant's ability to walk; that he had never asked someone
who was seriously injured, or handicapped, to walk a straight line; that he recalled seeing a cane,
a neck brace or a back brace in Appellant's car; that the brace was an indication Appellant had a
physical disability; and that he did not know of Appellant's handicaps.
      Officer Truss testified he was on duty at the Village Police Department when he first saw
Appellant; that he was in the video room when Appellant was being videotaped; that he could
smell alcohol; that Appellant was unsteady on his feet and had slurred speech; that, in his opinion,
Appellant had lost the normal use of his mental and physical faculties; that his opinion was based
"essentially compared to what we consider a normal operation of everybody."
      Appellant called four witnesses to testify, plus himself: 
      Billy Martin (chaplain of the Montgomery County Training Academy, a commissioned police
officer, and a contract teacher for law enforcement agencies and U.S. military units) testified that
he had known Appellant for many years; that he observed the sobriety test administered to
Appellant on the video; that the tests were not proper because of Appellant's injuries; that he had
personal knowledge of Appellant's physical condition; that Appellant uses a cane to walk and uses
pain-reducing electrical equipment called a "TENS unit"; that he had lunch with Appellant on July
6 and that Appellant had two drinks; that he spoke to Appellant around midnight July 6 and
appellant was not intoxicated; that he knows Appellant's normal range of mental and physical
faculties; that he viewed the video and, in his opinion, Appellant had not lost his mental and
physical faculties and was not intoxicated.
      James Bradley (special agent for the U.S. Drug Enforcement Administration) testified that he
has known Appellant 20 years; that he knows Appellant's normal, everyday-mental and physical
faculties and is aware of Appellant's physical handicaps; that he viewed the videotape and
Appellant looked 100% normal and was not intoxicated; that he had lunch with Appellant on July
6 and the only difference between Appellant's appearance during lunch and on the videotape was
he looked "a bit tired" in the video.
      David Conrad (special agent for 21 years with the U.S. Customs Service) testified that he had
known Appellant since 1973, and has frequent contact with him; that he had lunch with Appellant,
and others, on July 6; that he is familiar with Appellant's drinking habits and that Appellant never
has more than two drinks at a time; that he would be able to determine if Appellant was
intoxicated; that he had seen the videotape and he knows Appellant's normal ranges of physical
and mental ability; that based on such knowledge and what he saw on the videotape, his opinion
was that Appellant had lost no functions. He further testified he is familiar with Appellant's
physical disabilities; that he cannot walk very fast, uses a cane, is in pain frequently, and is
physically impaired, and he has never seen Appellant engage in any activity similar to a field-sobriety test.
      Ronald Tonkin (attorney and former Assistant U.S. attorney) testified that he has known
Appellant 20 years; that he had lunch with Appellant, and others, on July 6; that Appellant has
been declared 100% disabled by the United States Air Force and the Social Security
Administration; that he spoke with Appellant at 3:45 a.m. on July 7 and Appellant was not
slurring his words and, in his opinion, was not intoxicated; that he is familiar with Appellant's
physical difficulties; that he has seen the video and, in his opinion, Appellant had not lost the
normal use of his mental and physical faculties, and was not intoxicated.
       Appellant testified he retired on disability from the U.S. Air Force in 1992; that he had one
drink about midnight; that he was driving to the grocery store and was driving his normal route
with his cruise control set on 35 miles-per-hour; that after he saw the police unit with flashing
lights, he stopped at the side of the road, left his cane in the back seat so the officer would not feel
threatened, and walked out behind the car; that he did not stagger but he had a little difficulty
standing up and walking straight; that he pointed out to the officer the blue handicap decal on the
back of his car and the disabled-veteran's license plate, and told the officer he could not do the
test; that he reached into his pocket to show the officer a synopsis of a medical report and the
officer said he did not want to see it; that he was placed under arrest for refusing to take a
breathalyzer test; and that he asked to see a supervisor and was told he could see a supervisor at
the jail.
      Appellant's counsel asked Appellant what happened in the Air Force to cause him to become
permanently disabled. The prosecutor objected and the court sustained the objection. Appellant
was then asked what caused his injuries and the prosecutor again objected. After a brief bench
conference, Appellant was permitted to testify that his neck was separated from the top of his spine
in his last airplane crash. An objection was sustained to Appellant testifying about the crash but
he was permitted to testify what limitations the injuries he sustained presented for him. He
testified that "It causes a limitation. I can move within a 15-degree arch with my head. I don't
have full range of motion in my head, arms or legs. I have a loss of upper-body strength or
control, constant muscle spasms resulting in migraine headaches." He further testified he could
not perform the exercises the officer requested at the scene; that he had not lost his normal use of
his mental or physical faculties, and that he was not intoxicated.
      Appellant appeals on seven points of error. Point two contends "the evidence was insufficient
to sustain the jury verdict." In reviewing the sufficiency of the evidence, we must determine
whether, considering all of the evidence in the light most favorable to the verdict, any rational trier
of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson
v. Virginia, 99 S.Ct. 2781, 2789; Jones v. State, 833 S.W.2d 118÷, 122 (Tex. Crim. App. 1992).
      The three officers testified they did not know what the normal range of physical and mental
faculties were for Appellant, yet they testified he had lost the use of his normal physical and
mental faculties. Appellant has a different range based on the limitations imposed because of his
specific physical handicap. The officers further testified that the video of the sobriety test at the
police station showed that Appellant was unsteady on his feet, that he staggered, and his speech
was slurred. This court has reviewed the videotape (State's Exhibit #2) and knows that Appellant
did not have slurred speech, did not stagger, was not unsteady on his feet, and we think that,
within his physical limitations, did pass the physical tests performed.
      The police officers knew that Appellant was physically handicapped (i.e., the disabled-veteran's license plate, the handicap sticker; the cane and the brace; Appellant's statement that he
had physical disabilities), yet despite this knowledge, testified that he did not have normal use of
his physical faculties. One officer testified that he based his opinion "essentially compared to what
we consider a normal operation of everybody."
      Applying the criterion stated and reviewing all evidence in the light most favorable to the
verdict, we hold that no rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Point two is sustained.
      Under our view of the case we do not reach Appellant's remaining points. The judgment is
reversed and judgment is here rendered acquitting Appellant.
 
                                                                               FRANK G. McDONALD
                                                                               Chief Justice (Retired)

Before Justice Cummings,
      Justice Vance, and
      Chief Justice McDonald (Retired)
Reversed and rendered 
Opinion delivered and filed September 27, 1995
Do not publish